## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| SEAN F. BOGLE, ESQ., as Administrator of the Estate of BREONTE LAMAR JOHNSON DAVIS, SR., Deceased ) ) ) ) | CASE NO.: |
| Plaintiff, ) ) | JUDGE: |
| v. ) ) | |
| CITY OF PALMETTO, FLORIDA; CALEB COTTOM; MARTIN ILLAMES; MATTHEW WILSON; MIGUEL RODRIGUEZ; SERGEANT VINCENT DIORIO; SERGEANT RYAN LAROWE; CITY OF BRADENTON, FLORIDA; JULIAN JACKSON; COUNTY OF MANATEE, FLORIDA; SAM ALBON; JENNIFER ALEXANDER; JOHN DOES NOS. 1-10 ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **COMPLAINT** **(Jury Demand Endorsed Hereon)** |
| Defendants. ) | |

Plaintiff Sean F. Bogle, Esq., individually and as Administrator of the Estate of Breonte Lamar Johnson Davis, Sr. ("Davis"), Deceased ("Plaintiff"), by and through undersigned counsel, brings this Complaint against Defendants City of Palmetto, Florida, Caleb Cottom, Martin Illames, Matthew Wilson, Miguel Rodriguez, Sergeant Vincent Diorio, Sergeant Ryan LaRowe, City of Bradenton, Florida, Julian Jackson, County of Manatee, Florida, Sam Albon, Jennifer Alexander, and John Does Nos. 1-10 (collectively, "Defendants"), and makes the following allegations upon personal

knowledge as to Plaintiff's own acts, upon information and belief, and Plaintiff's attorneys' investigation as to all other matters, and states as follows:

## I.    INTRODUCTION

1.    This action arises out of the tragic and senseless tasing death of Breonte Lamar Johnson Davis, Sr., an unarmed Black man, who in the midst of a health-related crisis, was treated as a violent criminal and denied medical attention.

2.    Plaintiff alleges, without limitation, that Defendants used excessive force when they fatally tased Davis without justification, and further denied Davis medical care when he was in obvious distress and required emergency medical attention, on November 1, 2023, in Palmetto, Florida.

3.    Plaintiff brings this action pursuant to 42 U.S.C. § 1983 for the deprivation of the decedent, Davis', clearly established rights as secured by the Fourth and Fourteenth Amendments to the United States Constitution.

4.    Plaintiff also brings this action pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), and its progeny.

## II.    JURISDICTION AND VENUE

5.    This Court has federal question subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and 1343, as this action is brought, pursuant to 42 U.S.C. § 1983, to redress a deprivation of constitutional rights as set forth herein.

6.    Venue is proper in this Court under 28 U.S.C. § 1391 because all incidents, events, and occurrences giving rise to this action occurred in the jurisdiction

of the United States District Court for the Middle District of Florida and, upon information and belief, all parties reside in this judicial district.

### III.    PARTIES

7.    At all times relevant herein, Sean F. Bogle, Esq. is the Administrator of the Estate of Breonte Lamar Johnson Davis, Sr., deceased, and a resident of Florida.

8.    Defendant City of Palmetto, Florida, (hereinafter "Defendant Palmetto") is a municipal corporation located at City Hall, 516 8th Ave W., Palmetto, Florida 34221, in Manatee County.

9.    Defendant Palmetto maintains a division of police at the Palmetto Police Department.

10.    Defendant Palmetto employs/employed, as police officers, Defendants Caleb Cottom, Martin Illames, Matthew Wilson, Miguel Rodriguez, Sergeant Vincent Diorio, and Sergeant Ryan LaRowe.

11.    At all times relevant herein, Defendant Caleb Cottom was employed as a Police Officer for Defendant Palmetto and acted under color of state law.

12.    At all times relevant herein, Defendant Martin Illames was employed as a Police Officer for Defendant Palmetto and acted under color of state law.

13.    At all times relevant herein, Defendant Matthew Wilson was employed as a Police Officer for Defendant Palmetto and acted under color of state law.

14.    At all times relevant herein, Defendant Miguel Rodriguez was employed as a Police Officer for Defendant Palmetto and acted under color of state law.

15.    At all times relevant herein, Defendant Sergeant Vincent Diorio was

employed as a Police Officer for Defendant Palmetto and acted under color of state law.

16.    At all times relevant herein, Defendant Sergeant Ryan LaRowe was employed as a Police Officer for Defendant Palmetto and acted under color of state law.

17.    Defendant City of Bradenton, Florida, (hereinafter "Defendant Bradenton") is a municipal corporation located at City Hall, 101 Old Main Street, Bradenton, Florida 34205, in Manatee County.

18.    Defendant Bradenton maintains a division of police at the Bradenton Police Department.

19.    Defendant Bradenton employs/employed, as a police officer, Defendant Julian Jackson.

20.    At all times relevant herein, Defendant Julian Jackson was employed as a Police Officer for Defendant Bradenton and acted under color of state law.

21.    Defendant County of Manatee, Florida, (hereinafter "Defendant County") is a political subdivision and unit of local government duly organized under the laws of the state of Florida, located at 1112 Manatee Ave West, Bradenton Florida, 34205, in Manatee County.

22.    Defendant County maintains a division of emergency medical services, Manatee County EMS.

23.    Defendant County employs/employed, as emergency medical personnel, Defendants Sam Albon and Jennifer Alexander.

24.     At all times relevant herein, Defendant Sam Albon was employed as a paramedic for Defendant County and acted under color of state law.

25.     At all times relevant herein, Defendant Jennifer Alexander was employed as an EMT for Defendant County and acted under color of state law.

26.     Redress is being sought from all Defendants in their official and individual capacities, and all Defendants were acting under and/or outside of color of law and/or pursuant to the policies, customs, and/or usages of Defendant Palmetto and/or Defendant Bradenton.

27.     At all times relevant herein, Defendant(s) John Doe Nos. 1-10, whose names and addresses are unknown despite the exercise of reasonable diligence, are believed to be police officers, supervisors, commanders, and/or other administrative, police department, or City employees of Defendant(s) Palmetto and/or Bradenton and/or County whose identities or involvement in the events giving rise to the claims asserted herein cannot be ascertained and/or discovered by Plaintiff at the present time, but whom, through conducting discovery, may become known as being persons properly included as Defendants in this matter.

## IV.    STATEMENT OF FACTS

28.     The misconduct of Defendants occurred on or about November 1, 2023.

29.     Upon information and belief, Defendants Caleb Cottom, Martin Illames, Matthew Wilson, Miguel Rodriguez, Sergeant Vincent Diorio, Sergeant Ryan LaRowe are trained by Defendant Palmetto on the dangers of leaving detainees in the prone position and positional asphyxiation and/or know the dangers of leaving

detainees in the prone position and positional asphyxiation.

30.    Upon information and belief, Defendant Julian Jackson is trained by Defendant Bradenton on the dangers of leaving detainees in the prone position and positional asphyxiation and/or know the dangers of leaving detainees in the prone position and positional asphyxiation.

31.    Upon information and belief, Defendants Sam Albon and Jennifer Alexander are trained by Defendant County on the dangers of leaving detainees in the prone position and positional asphyxiation and/or know the dangers of leaving detainees in the prone position and positional asphyxiation.

32.    In the early morning hours of November 1, 2023, Palmetto police officers receive a call from a convenience store located at 1706 Eighth Avenue West in Palmetto, Florida, regarding a customer who is acting erratically and disruptive towards staff and other customers in the store.

33.    In response to the call, at around 2:20am, Palmetto officers Defendants Caleb Cottom, Martin Illames, and Matthew Wilson, along with off-duty Bradenton officer, Defendant Julian Jackson, identify Davis running out of the convenience store.

34.    Davis is further observed speaking incoherently and experiencing an obvious break from reality.

35.    Davis is observed to be unarmed and is not reported to have been violent or a physical threat.

36.    After exiting the convenience store, Davis climbs onto the hood of a police cruiser and continues to speak incoherently and make high-pitched noises.

37.    Defendant Caleb Cottom tells Davis to calm down and approaches Davis.

38.    Defendant Caleb Cottom then grabs Davis by the arm, causing Davis to pull away and begin moving away from Defendant Caleb Cottom.

39.    Defendant Julian Jackson then tackles Davis to the ground.

40.    Defendants Caleb Cottom and Julian Jackson pile on top of Davis.

41.    Davis is in the prone position, with his face down towards the ground.

42.    Defendants secure one of Davis's arms with a handcuff. Davis struggles, as Defendant Caleb Cottom tells him to stop.

43.    At no point does Davis attempt to strike the officers or otherwise demonstrate violence.

44.    Seconds later, Defendant Caleb Cottom deploys taser probes into Davis's body.

45.    Davis continues to make unintelligible noises while remaining in the prone position.

46.    Shortly after deploying the first taser probes, Defendant Caleb Cottom deploys a second five-second taser burst into Davis's body.

47.     Immediately after being tased for a second time, Davis clearly states "I can't breathe."

48.    Defendants Martin Illames, Matthew Wilson, and Miguel Rodriguez surround Davis while he is in the prone position, hold him down, and handcuff him.

49.    Defendant Caleb Cottom calls for EMS to "see if they can get this guy

calmed down."

50.    Davis remains in the prone position, facing down on the pavement.

51.    At no point does any officer sit Davis upright or stand him up.

52.    Upon disengaging from Davis, Defendant Caleb Cottom states that he "finally got to use it," regarding his new taser that he deployed on Davis's person. He then proceeds to inspect the hood of his police cruiser.

53.    Defendants Martin Illames, Matthew Wilson, and Miguel Rodriguez continue to surround Davis while he is in the prone position, while putting their knees into Davis's back.

54.    Defendant Julian Jackson states "Homeboy was tweaking on something."

55.    Shortly thereafter, Defendant Julian Jackson states to Defendant Caleb Cottom, "I'm on my way home. I wasn't even here." Defendant Caleb Cottom replies, stating "Yep." Defendant Julian Jackson then leaves the scene.

56.    Defendants Sam Albon and Jennifer Alexander arrive on the scene.

57.    After Defendants Sam Albon and Jennifer Alexander arrive on the scene, Davis remains on his stomach in the prone position.

58.    Officers then begin to remove the taser probes from Davis's body.

59.    Officers comment that there would be no criminal charges against Davis based on the incident at the convenience store.

60.    Davis states "Lord Jesus" multiple times, apparently in pain and medical distress.

61.    Officers' knees remain on Davis's back.

62.    Another Defendant officer states to Defendant Caleb Cottom, "You finally got to deploy the new Taser. I Like it."

63.    Defendant Sam Albon approaches Davis, states that he is a paramedic, and asks "Hey, man. What's going on?" No medical aid is rendered.

64.    Defendants Sam Albon and Jennifer Alexander walk back towards the officers and away from Davis. No medical aid has been rendered at this time.

65.    Defendants continue to walk around the area where Davis is located and converse with each other, laughing and making light of the present situation.

66.    Defendant Caleb Cottom states, "I saw a black guy run across the road I was like that's the guy." Another officer responds, stating, "There's a sign."

67.    EMS personnel roll a cot up to Davis. Defendant Sam Albon, obviously confused, observes Davis.

68.    Defendant Sam Albon moves the cot closer to Davis and walks away towards the Defendant officers, while Defendant Jennifer Alexander remains next to Davis. Still no medical aid has been rendered at this time.

69.    Defendant Caleb Cottom asks Defendant Jennifer Alexander if she needs any assistance with getting Davis onto the cot. Defendant Jennifer Alexander replies, "No, he's fine." This exchange is observed by Defendant Sergeant Vincent Diorio and/or Sergeant Ryan LaRowe.

70.    Defendant Sergeant Vincent Diorio states that he does not think that it would be possible to lift Davis onto the cot. He then asks Defendant Sam Albon

whether he could give Davis "something to calm him down." Defendant Sam Albon replies, "What I got ain't gonna work."

71.     Defendant Jennifer Alexander tells Davis "Stop flopping around, so I can get your vitals." At this point, Davis is no longer making any noise.

72.     Defendant Jennifer Alexander places a pulse monitor on Davis and proceeds to disengage, placing her hands on her hips.

73.     Defendant Sergeant Vincent Diorio observes Davis, as he lies lifeless.

74.     Defendant Sam Albon walks back towards Davis. At this time, still no medical aid has been rendered at any point.

75.     At this point, Defendant Sergeant Vincent Diorio bends over to check on Davis. He proceeds to ask EMT "are you getting a pulse?"

76.     Approximately 11 minutes and 46 seconds after Davis is initially taken to the ground, Defendant Sam Albon states "Check for a pulse right now."

77.     Davis remains prone and face down.

78.     Defendant Sam Albon states, "flip him, now," and CPR is started on Davis's body, but it is too late.

79.     Davis is pronounced dead on November 2, 2023.

80.     Following an internal investigation by the City of Bradenton Police Department, it was found that Defendant Julian Jackson had violated six departmental procedural general orders when he stopped to assist the Palmetto Police Department Officers.

81.     Upon information and belief, Defendant Julian Jackson was terminated

by Defendant Bradenton as a result of this incident.

## V.    CLAIMS ALLEGED

### COUNT I
### 42 U.S.C. § 1983 – Excessive Force
### (Against Defendants Caleb Cottom, Martin Illames, Matthew Wilson, Miguel Rodriguez, and Julian Jackson)

82.    This claim is brought pursuant to Title 42 U.S.C. §1983.

83.    Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

84.    The Fourth Amendment to the United States Constitution states, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."

85.    The United States Supreme Court has long held that where officers use force in the arrest or detention of a citizen that is excessive, it violates the Fourth Amendment to the United States Constitution. See generally, draft *Graham v. Connor*, 490 U.S. 386 (1989) (determining that a use of force analysis requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake).

86.    While acting under color of law, Defendants deprived Davis of his well-

established right to be free from excessive force.

87.    In other words, Plaintiff asserts that Davis had the well-established constitutional right not to be subjected to excessive force while being detained, even if his detainment could have been otherwise proper.

88.    On November 1, 2023, Defendants were only permitted to use the amount of force necessary under the circumstances to detain Davis.

89.    At all times relevant to this matter, the Defendants were clothed with the authority of the state and misused that authority.

90.    In this case, Plaintiff claims that Defendants used excessive force when they arrested and/or seized Plaintiff, to wit:

    a.    Defendant Julian Jackson forcibly tackled Davis to the ground;

    b.    Defendants all piled on top of Davis while he lay in the prone position, facing the ground;

    c.    Defendants all, at different times, placed their knees into the back of Davis while he lay in the prone position, facing the ground;

    d.    Defendant Caleb Cottom deployed his taser into Davis's body;

    e.    Defendant Caleb Cottom deployed his taser into Davis's body a second time, and for an unreasonable amount of time;

    f.    Defendants Martin Illames, Matthew Wilson, and Miguel Rodriguez failed to intervene and, instead, looked on as Defendants Julian Jackson and Caleb Cottom used excessive force on Davis.

91.    Plaintiff seeks damages on Decedent Davis's behalf for injuries

proximately caused by Defendants' use of force and/or failure to intervene in stopping an excessive use of force, all in violation of Davis's clearly established Fourth Amendment rights, as set forth in the above Paragraphs.

## COUNT II
### 42 U.S.C. § 1983 – Denial of Medical Care
### (Against All Defendants)

92.    This claim is brought pursuant to Title 42 U.S.C. §1983.

93.    Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

94.    For decades, the United States Supreme Court has interpreted the Fourteenth Amendment to the United States Constitution to guarantee the well-established substantive due process right of being protected from deliberate decisions and arbitrary actions of government officials that result in a deprivation of life. *See Daniels* v. *Williams,* 414 U.S. 327, 331-332 (1986).

95.    While acting under the color of state law, Defendants deprived Davis of his well-established right to be free from deliberate decisions and arbitrary actions of government officials that result in a deprivation of life.

96.    In other words, on November 1, 2023, Defendants knew that Davis was in serious medical need, to wit:

a.   Defendants observed Davis act in a manner that was sporadic and detached from a normal perception of reality;

b.   Defendants observed Davis say that he could not breathe on numerous occasions;

c.   Defendants heard Davis struggling to breathe;

d.   Defendants heard Davis plead that he was in distress;

e.   Defendants observed Davis lying motionless on the ground;

f.   Defendants heard Davis cry out in pain;

g.   Defendants Sam Albon and Jennifer Alexander do not render any medical aid upon arriving at the scene, despite Davis being in obvious medical distress;

h.   Defendant Jennifer Alexander states "No, he's fine," when asked about Davis's medical condition.

97.    Davis's need for medical care was so serious and so obvious that even a reasonable layperson would have easily recognized the necessity of medical attention.

98.    Rather than provide Davis with the necessary medical attention, Defendants deliberately ignored his pleas for medical care.

99.    Rather than provide Decedent Caffey with the necessary medical attention, Defendants deliberately ignored the clear and visible objective signs of Davis's serious medical need.

100.    Rather than provide Davis with the necessary medical attention, the Police Officer Defendants, without checking on Davis's wellbeing, continued to use

14

excessive force against him.

101.    Defendants, who personally observed and listened to Davis as he cried out and exhibited clear, objective signs of serious medical need, knew or should have known that Davis was suffering from a serious medical need.

102.    Davis was still conscious when Defendants Sam Albon and Jennifer Alexander arrived on scene.

103.    Defendants' deliberate and objectively unreasonable denial of medical care for Davis violated his clearly established rights under the Fourteenth Amendment to the United States Constitution.

104.    Plaintiff seeks damages on Decedent Davis's behalf for injuries proximately caused by Defendants' denial of medical care in stopping an excessive use of force, all in violation of Davis's clearly established Fourteenth Amendment rights, as set forth in the above Paragraphs.

<u>**COUNT III**</u>
**42 U.S.C. § 1983 – Supervisory Liability**
**(Against Defendants Sergeant Vincent Diorio and Sergeant Ryan LaRowe)**

105.    This claim is brought pursuant to Title 42 U.S.C. §1983.

106.    Title 42 U.S.C. §1983 states, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."

107.    At all times relevant to this matter, Defendant Sergeant Vincent Diorio and Defendant Sergeant Ryan LaRowe (collectively, the "Supervisory Defendants") was/were the direct supervisor(s) of Defendants Caleb Cottom, Martin Illames, Matthew Wilson, and Miguel Rodriguez.

108.    At all times relevant to this matter, the Supervisory Defendants had supervisory authority over Defendants Caleb Cottom, Martin Illames, Matthew Wilson, and Miguel Rodriguez.

109.    At all times relevant to this matter, the Supervisory Defendants knew or reasonably should have known of, and/or participated in, and/or condoned, and/or ratified:

        a.  The excessive force exercised on Davis;

        b.  The denial of medical care to Davis.

110.    Accordingly, the Supervisory Defendants knew or reasonably should have known that their acts and/or failures to act would likely cause the constitutional injury that befell Davis, to wit: by endorsing, promoting, encouraging, and/or not intervening to stop the detainment of and/or force used on Davis.

111.    The Supervisory Defendants violated Davis's Fourth Amendment Rights to be free from unreasonable search and seizure.

112.    The Supervisory Defendants violated Davis's Fourteenth Amendment Rights to be protected from deliberate decisions and arbitrary actions of government officials that result in a deprivation of life.

113.    The Supervisory Defendants had a duty and/or were required by

his/their training to take action to prevent Defendants Caleb Cottom, Martin Illames, Matthew Wilson, and Miguel Rodriguez from seizing and/or treating Davis as described in this Complaint.

114.     Despite his/their knowledge of the misconduct of Defendants Caleb Cottom, Martin Illames, Matthew Wilson, and Miguel Rodriguez, as stated in this Complaint, the Supervisory Defendants took no action, failed to prosecute the Defendants for the crime of assault and/or battery, failed to impose reasonable discipline on the Defendants, failed to document the misconduct of the Defendants fully and accurately, and/or otherwise abandoned his/their supervisory duties.

115.     As a result of his/their failures and/or abandonment of his/their supervisory duties, as stated above, the Supervisory Defendants created an environment that condoned the aforementioned misconduct and perpetuated and/or facilitated and/or aided the misconduct of the Defendants against Davis.

116.     The Supervisory Defendants engaged in acts and omissions that were the product of a reckless or callous indifference to Davis's constitutional rights, to wit: the Supervisory Defendants approved, endorsed, and/or condoned the seizure and treatment of Davis in the manner detailed above.

117.     By their failure to intervene or their empowerment of Defendants Caleb Cottom, Martin Illames, Matthew Wilson, and Miguel Rodriguez to effectuate the seizure of Davis, the Supervisory Defendants in fact caused Davis's constitutional deprivation.

118.     Plaintiff seeks damages on Decedent Davis's behalf for injuries

proximately caused by the Supervisory Defendants' conduct, all in violation of Davis's clearly established Fourth and Fourteenth Amendment rights, as set forth in the above Paragraphs.

**COUNT IV**
*Monell* **– Governmental Liability**
**(Against Defendants Palmetto, Bradenton, and County)**

119.    This claim is brought pursuant to Title 42 U.S.C. §1983.

120.    This claim is brought per *Monell v. Dep't of Soc. Svcs. of City of New York,* 436 U.S. 658 (1978).

121.    Official policies or customs can result from: (a) a formal regulation or policy statement; (b) an informal custom amounting to a widespread practice that, although not authorized by written laws or express policy is so permanent and well settled as to constitute a custom or usage with the force of law; (c) the decisions of employees with final policymaking authority; (d) the ratification of such final policymakers of the decisions, and the basis for them, of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (e) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

122.    A municipality is liable under § 1983 when its agency's policy or custom, as evidence in any of the manners set forth above, is "closely related" to the ultimate constitutional injury suffered by the plaintiff, and/or causes or occasions the constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).

i.    *Defendant City of Palmetto, Florida*

123.    Defendant Palmetto maintains an armed police force, the Palmetto Police Department, with the power to arrest citizens.

124.    Defendant Palmetto is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

125.    Defendant Palmetto is a person subject to suit under 42 U.S.C. § 1983 for the violation of Davis's rights under the United States Constitution.

126.    Defendant Palmetto is aware that its officers engage in violent behavior that involves excessive force in violation of the Fourth Amendment.

127.    Defendant Palmetto maintained, and continues to maintain, a custom and/or policy of using unnecessary and excessive force. This custom and/or policy is so widespread within Defendant Palmetto that it has the force of the law.

128.    Specifically, Palmetto maintains a custom and/or policy of promoting, encouraging, and failing to reprimand officers' premature and unnecessary deployment of tasers.

129.    Such custom and/or policy regarding the use of tasers, particularly in situations of detaining and/or arresting non-violent citizens, has led to an upward trend in the unnecessary use of tasers.

130.    Defendant Palmetto is aware that its officers engage in behavior that leaves detainees vulnerable to serious injury or death in that they are left in the prone position and at risk of positional asphyxiation, in violation of the Fourth Amendment.

131.    Defendant Palmetto maintained, and continues to maintain, a custom

and/or policy of denying medical care to detainees that are left in the prone position. This custom and/or policy is so widespread within Defendant Palmetto that it has the force of the law.

132. Specifically, Palmetto maintains a custom and/or policy of promoting, encouraging, and failing to reprimand officers' denial of medical care in the manner described above.

133. Defendant Palmetto is also liable under *Monell* because the department's training, decision-making- and policymaking with respect to using force is so inadequate that it shows the Palmetto Police Department's deliberate indifference to the constitutional rights of citizens.

134. Additionally, Defendant Palmetto is liable under *Monell* because the department's training, decision-making- and policymaking with respect to providing adequate medical attention to detainees is so inadequate that it shows the Palmetto Police Department's deliberate indifference to the constitutional rights of citizens. Specifically, Palmetto failed to train and/or failed to properly train its officers regarding:

     a. leaving detainees in the prone position;

     b. the dangers of positional asphyxiation;

     c. providing basic and/or timely care to nonviolent detainees;

     d. providing basic and/or timely care to detainees that are in distress.

135. Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or

different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been delivery indifferent to the need." *City of Canton*, 489 U.S. at 390.

136.    The above-mentioned circumstances show "the need for more or different training," as the Supreme Court outlined in *City of Canton v. Harris. Id*.

137.    Defendant Palmetto's toleration of and failure to properly discipline officers who engage in the abovementioned behavior is evidence that Davis's injuries are traceable to Palmetto's custom of permitting excessive force and/or the denial of adequate medical attention, and it is evidence that Palmetto has acted with deliberate indifference in failing to supervise its officers. See, e.g., *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 404 (1997) (stating that "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law").

138.    Defendant Palmetto's failure to adequately train its officers, including Defendants Caleb Cottom, Martin Illames, Matthew Wilson, Miguel Rodriguez, Sergeant Vincent Diorio, and Sergeant Ryan LaRowe, concerning the appropriate use of force and medical attention and to properly discipline them for their prior instances of excessive force and the denial of medical aid directly and proximately caused the violation of Davis's Fourth and Fourteenth Amendment rights.

### ii.    *Defendant City of Bradenton, Florida*

139.    Defendant Bradenton maintains an armed police force, the Bradenton

Police Department, with the power to arrest citizens.

140. Defendant Bradenton is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

141. Defendant Bradenton is a person subject to suit under 42 U.S.C. § 1983 for the violation of Davis's rights under the United States Constitution.

142. Defendant Bradenton is aware that its officers engage in improper off-duty police conduct in violation of internal policies and procedures.

143. Defendant Bradenton is liable under *Monell* because the department's training, decision-making- and policymaking with respect to ensuring that its officers understand proper police protocol when off-duty and when a neighboring police department is responding to a non-violent call for police intervention is so inadequate that it shows the Palmetto Police Department's deliberate indifference to the constitutional rights of citizens.

144. Additionally, Defendant Bradenton is liable under *Monell* because the department's training, decision-making- and policymaking with respect to providing adequate medical attention to detainees is so inadequate that it shows the Bradenton Police Department's deliberate indifference to the constitutional rights of citizens. Specifically, Bradenton failed to train and/or failed to properly train its officers regarding:

      a. leaving detainees in the prone position;

      b. the dangers of positional asphyxiation;

      c. providing basic and/or timely care to nonviolent detainees;

      d.  providing basic and/or timely care to detainees that are in distress.

145.  Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been delivery indifferent to the need." *City of Canton*, 489 U.S. at 390.

146.  The above-mentioned circumstances show "the need for more or different training," as the Supreme Court outlined in *City of Canton v. Harris*. *Id.*

147.  Defendant Bradenton's failure to adequately train its officers, including Defendant Julian Jackson, concerning proper police protocol when off-duty and when a neighboring police department is responding to a non-violent call for police intervention and to properly discipline them for their prior instances of the same directly and proximately caused the violation of Davis's Fourth and Fourteenth Amendment rights.

### iii.    *Defendant County of Manatee, Florida*

148.  Defendant County maintains emergency medical services, Manatee County EMS.

149.  Defendant County is also ultimately responsible for the assignment of personnel for training and disciplinary purposes.

150.  Defendant County is a person subject to suit under 42 U.S.C. § 1983 for the violation of Davis's rights under the United States Constitution.

151.  Defendant County is aware that its EMS personnel engage in behavior

that involves the denial of medical care in violation of the Fourteenth Amendment.

152.    Defendant County is liable under *Monell* because the department's training, decision-making- and policymaking with respect to the denial of medical care is so inadequate that it shows Manatee County EMS's deliberate indifference to the constitutional rights of citizens. Specifically, Defendant County failed to train and/or failed to properly train its EMS personnel regarding:

        a.  leaving detainees in the prone position;

        b.  the dangers of positional asphyxiation;

        c.  providing basic and/or timely care to nonviolent detainees;

        d.  providing basic and/or timely care to detainees that are in distress.

153.    Under *City of Canton v. Harris*, liability may attach to a municipality if "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been delivery indifferent to the need." *City of Canton*, 489 U.S. at 390.

154.    The above-mentioned circumstances show "the need for more or different training," as the Supreme Court outlined in *City of Canton v. Harris*. *Id*.

155.    Defendant County's failure to adequately train its EMS personnel, including Defendants Sam Albon and Jennifer Alexander, concerning the denial of medical care and to properly discipline them for their prior instances of the denial of medical care directly and proximately caused the violation of Davis's Fourteenth Amendment rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, jointly and severally, for an amount in excess of $75,000.00, including but not limited to:

A.     Compensatory and consequential damages in an amount to be determined by the Court in excess of the Court's jurisdictional amount;

B.     Punitive damages in an amount to be determined at trial, for the willful, reckless, and malicious conduct of Defendants;

C.     Equitable relief, including, without limitation, that Defendants be made to adopt an appropriate policy to prevent future instances of the type of misconduct described herein;

D.     Attorneys' fees and the costs of this action and other costs that may be associated with this action; and

E.     Any and all other relief that this Court deems equitable, just and proper.

## **JURY DEMAND**

Plaintiff respectfully demands a trial by jury of the within matter.

*     *     SIGNATURE PAGE FOLLOWS     *     *

Respectfully submitted,

_/s/ Justin S. Abbarno_
Justin S. Abbarno
State Bar No. 1027968
**DiCELLO LEVITT LLP**
8160 Norton Parkway, Third Floor
Mentor, Ohio 44060
Tel.:   (440) 953-8888
Fax:   (440) 953-9138
jabbarno@dicellolevitt.com

***Counsel for Plaintiff***